## THE AMERICAN BANK *v.* JAMES MUMFORD, Collector.

Assumpsit lies against a collector of taxes to recover back the amount of a tax collected by him upon levy and sale under his warrant, when such tax has been illegally assessed upon the personal estate of a bank, not liable to be taxed for personal estate, although the bank, being liable to be taxed for its real estate, has made no return of its ratable property to the assessors; such a case not being one of over-taxation of property in its nature taxable to banks, but of the taxation of property which it was not within the competence of the assessors to tax to such a corporation.

By the tax act of January, 1855, banks of discount, deposit, and circulation, though taxable for their real estate, are not liable to be taxed for their personal property; all their property of this latter character being deemed to be represented by the shares of their capital stock, which are required by the act to be taxed to their stockholders in the towns where they reside; and there being nothing in the act to warrant double taxation of it.

THIS was an action of assumpsit brought by the American Bank against the defendant, collector of taxes in the city of Providence, to recover the sum of $261, being the amount by him received for four shares in the capital stock of the Whatcheer Corporation, standing in their name, and by him levied and sold, under their protest, for taxes assessed by the city of Providence against them. The declaration, which was special, averred, that on the 2d day of June, in the year 1856, a tax was ordered by the city council of the city of Providence, of $450,000, to be assessed upon the inhabitants of said city and the ratable property therein, in the manner prescribed by law, payable on the 1st day of September in said year, and that the assessors of taxes in said city, assessed the plaintiff bank in the sum of $246.45, upon personal property alleged to belong to the bank; that all the personal property held by said corporation belongs to its stockholders, and consists of the amount of capital stock paid in and such additional sums as have been earned in the course of the business of the bank, and which have not been divided amongst its stockholders, all of which is loaned upon interest in the course of the business of the bank; and that, the sum upon which they were assessed as ratable personal estate of the corporation was the estimated sum of the surplus earnings of the bank, amounting to $31,800, and inseparably connected with and forming a part of the capital stock of the bank,

assessed to the stockholders thereof; and that the said tax assessed thereon as the ratable property of the bank was illegal, and wholly unwarranted by law. The declaration then averred the levy upon the stock of the plaintiffs in the Whatcheer Corporation, and the sale and receipt of proceeds of sale of same, under protest, by the defendant as collector of taxes, and an implied assumpsit to repay the same on request.

To this declaration, the defendant put in a general demurrer.

*Charles Hart & Thomas A. Jenckes* for the plaintiffs.

*James M. Clarke & Wm. H. Potter* for the defendant.

BOSWORTH, J.[1] This is a case in which the plaintiffs, a bank, seek to recover a sum of money collected by the tax collector of the city of Providence, upon his warrant, by means of a levy on and sale of their property. The case comes before the court upon a demurrer to the declaration of the plaintiffs.

The questions before the court arising upon the demurrer are—

1. Whether the tax assessed upon the American Bank was legally assessed.

2. Whether, if the tax was illegally assessed, the bank has a legal remedy in this form of action.

To consider the last proposition first in order, we think it is well settled that money paid under a void assessment, *i. e.* where the person or property assessed is not liable to be assessed at all, may be, if compulsorily paid, recovered back in an action of assumpsit. On the other hand, if there is power to assess a tax, and the complaint is that the tax assessed is too large, the mode of redress provided by the statute must be followed, or no redress can be had. The law, in such case, provides a remedy, of which the party injured may avail himself; and explicitly provides that no other remedy shall be had.

If the tax which was assessed was on property liable to be assessed at all, the plaintiffs, by neglecting the remedy provided by the statute, have lost all remedy, and cannot sustain themselves in the action now before us.

---

[1] Ames, C. J., having been of counsel in the cause did not sit in the same.

It is contended by the defendant that the American Bank was liable to taxation for real and personal estate. By the plaintiffs, it is contended that, though liable to taxation for their real estate, they were not liable under the law to be taxed for any personal estate. The plaintiffs acknowledge their liability to the tax on real estate, and have tendered to the collector the amount of the tax assessed thereon. They were liable for this tax because the law specially provides that real estate shall be . taxed in the town where it is situated. Now it is contended that being liable to this tax, though taxed for a large amount of personal property in addition to this admitted liability for their real estate tax, it is a mere case of over-taxation, where there is a legal right to impose a tax; and therefore a case in which the statute remedy must be pursued, or all remedy is lost.

The law regulating the assessment and collection of taxes makes two classes of property liable to taxation—real and personal. It defines where, and on whom, it shall be assessed. It shall be assessed upon the owner; in the case of real estate, in the town where the property is situated; in the case of personal property, in the place where the owner shall dwell. The assessors of Providence may tax a non-resident for his real estate located there; but they cannot tax a non-resident for personal property, because the law provides that he shall be taxed in the town where he resides. If they tax a non-resident for personal property, their assessment is void; and though the same non-resident may be legally taxed for real estate, this cannot give jurisdiction to tax the personal estate. The two species of property are to be taxed separately. In the case put, they have the power to tax the one, and not the other. If the owner hands in his list according to the provision of the law, he may, in case he is taxed for more real estate than he has, or his real estate is valued too high, take his appeal. Failing to do this, he has no remedy. But the case is different as to his personal estate. That is to be taxed in the place of his residence. Over that the assessors of any other place, than the place of his residence, have no power.

So in this case, the real estate of the plaintiffs was rightfully taxed. If the personal property, taxed to this bank, was not

liable to taxation, then the assessment was without the authority of law, and simply void. If the property of the plaintiff has been taken to pay this tax, thus assessed, it may be recovered back in an action of assumpsit, as money belonging to the plaintiff, which the defendant has no right to retain.

Assuming then that the money received by the defendant may be recovered by the plaintiff in this action, if collected under a void assessment, the next inquiry is: Was the assessment of this property, to pay which the property in question was levied upon and sold, legally made? Was it a valid or void assessment?

The authority of the assessors is derived from the law regulating the assessing and collecting of taxes. The inquiry is not whether the state have power to tax this sort of property in the manner in which it was here assessed, but whether such a power has been exercised, or whether, under the law, this property was liable to be assessed, in the mode in which it was assessed, by the assessors of the city of Providence?

For the purpose of determining this question, let us look at the terms of the law under which the assessment was made.

By the act of January, 1855, entitled "An act to regulate the assessing and collecting of taxes," the towns are authorized to raise such sums of money as may be needful for defraying the necessary expenses of the town, support of schools, or paying the town debts or state taxes, by a tax on real and personal estate. Section 2 of the act provides that all property within this state, *liable to taxation*, shall be taxed at its full and fair cash value. Section 5 provides that the assessors shall assess and apportion any tax on the inhabitants of the town and the ratable property therein. It also provides that assessors may require every person and body corporate *liable* to taxation to bring in a true and exact account of all his *ratable* estate, describing and specifying the value of every parcel of his real and personal estate, at such time as they may prescribe. The assessors are then required by section 6, to make a list containing the true, full, fair cash value of all the ratable estate in the town, placing real and personal estate in separate columns, and to apportion the tax accordingly. By section 8, all real estate shall be taxed

in the town where the same is situate, and all ratable personal estate in the town where the owner may have his residence at the time the tax is ordered; except when otherwise specially provided.

Section 9 defines what shall be deemed to be personal property for the purposes of taxation; and in the enumeration, the shares or stock of corporations of this sort are clearly included as a subject of taxation to the owner, of course to be assessed under section 8 to the owner in the town where he may reside, with the exception of stock or shares of corporations established for religious or charitable purposes.

By section 17, the personal property of religious or benevolent societies, is to be taxed in the town where the corporation holds its meetings.

These are the provisions of the law, which, it seems to us, have a bearing on the question we are now considering, and from which we are to gather the intention of the law-making power, as to whether this property should have been assessed as it has been, or not.

Taxes are to be assessed on the real and personal estate. The real estate is to be assessed in the town where it is situate; the personal estate in the town where the owner resides. It is to be assessed at its fair cash value. The two species of property are to be assessed separately. The stock or shares of corporations are to be assessed or taxed as personal estate, of course to the respective owners, in the towns where they reside. Thus, all the property of this corporation is taxed at its fair cash value, under the name of shares, or stock. Can we, from the terms of the act, gather authority to tax it again, under the name of capital stock or surplus capital? If it is taxed again, will not the same property be doubly taxed, or assessed for more than its fair cash value? We do not find in the enumeration of kinds of property, deemed to be personal for the purposes of taxation, either capital stock or surplus capital stock. Neither do we find, by any express terms of the act, that the personal property of corporations, other than that of religious or benevolent societies, is to be taxed in the place where the corporation holds its meetings; and with respect to this latter

class of corporations, the act directs that the shares or stock shall not be taxed. When the act provides that shares or stock of corporations shall not be taxed, it also provides that the personal property shall be taxed ; when it provides that the stock or shares shall be taxed, it does not provide that personal property shall be taxed to the corporation. In the one case, it plainly treats the corporation as the proper subject of taxation ; in the other, the stock owner or shareholder. In neither, does the act furnish any expression to indicate an intention that the same property shall be twice taxed under different names. The burdens of the state are to be fairly distributed. Without deciding that a double taxation would, under all circumstances, be an unfair distribution of the burdens of the state, we think, under the sanction of such a constitutional principle, a court would not be justified in inferring an intention on the part of the legislature to impose a double taxation, without clear evidence of such intention, deducible from the language of the act.

We do not think that there is any thing in the language of the act of January, 1855, from which an intention, to make the capital stock of a bank or any part of it taxable to the corporation, can legitimately be inferred. On the contrary, the provisions that such property shall be taxable in shares or stock; that all property shall be taxable at its *fair cash value;* that the assessors shall make a list of all ratable property, and *apportion* the tax accordingly, all go to evince a contrary intention.

So far as the court are advised, taxes have never been so assessed in this state, under the laws heretofore enacted. A practical construction, established and existing for a series of years, has sanctioned the views which we have taken, so far as they apply to the mode of assessing taxes, under former laws ; and upon a comparison of the law of 1855 with former acts regulating the assessing and collection of taxes, we are unable to see that it introduces any new principle, or makes any change, that authorizes a departure from this settled construction.

The decisions of the courts of other states have been cited to us as authorities. Upon a close examination of them and

of the statutes under which they arose, we think there is no one of them inconsistent with the view which we have taken of this case. In some of the states, it is provided by law, that the property of corporations shall be taxed to them as corporate property; and in such case, it is not taxed to the individual corporators. In some cases, it has been taxed to both the corporation and the corporators. This has been by clear statute enactment. In Massachusetts, where the tax law of the state most assimilates to our own, the decisions of the supreme court of that state, are in full harmony with the view which we now take of the questions in this case. 10 Mass. Rep. 519; 17 ibid. 441; 9 Met. Rep. 202; 12 Pick. 7.

The demurrer must be overruled, and the plaintiffs have judgment for the amount declared for, with costs.